Thomas J. LOWRANCE,
Plaintiff–Appellant,

v.

Stephen J. HACKER, Defendant–
Appellee.

No. 91–1121.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1992.

Decided July 8, 1992.

Morris W. Ellis, Ellis & Ellis, Chicago, Ill. (argued), for plaintiff-appellant.

L. Andrew Brehm (argued), Michael B. Roche, James Adducci, Schuyler, Roche & Zwirner, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, CUDAHY and POSNER, Circuit Judges.

CUDAHY, Circuit Judge.

Attorney Morris Ellis[1] appeals the district court's denial of his motion for attorney's fees stemming from his representation of Thomas J. Lowrance in proceedings to collect on a judgment entered in favor of Lowrance against Stephen J. Hacker. Ellis also contends that the district court erred in denying him a statutory attorney's lien on certain funds belonging to Hacker that are currently held by the court. We affirm the judgment as to the attorney's lien but reverse in part the denial of fees.

## I. FACTS

On February 1, 1984, Stephen J. Hacker opened a commodity trading account with the brokerage firm of Rosenthal & Company (Rosenthal). In connection with the opening of that account, Hacker entered into a Commodity Customer Agreement with Rosenthal (the Agreement). The Agreement included the following provision:

> In the event of the closing of the accounts of the undersigned [Hacker] by you [Rosenthal] or the undersigned in whole or in part, the undersigned shall remain liable for any deficiency, together with interests and costs, expenses and reasonable attorneys' fees should an attorney be employed to enforce collection.

From mid-June to mid-September of 1984, Thomas J. Lowrance acted as Hacker's commodities trading adviser for Hacker's account with Rosenthal. During that period, Hacker lost more than $500,000 in that account. At the time the account was closed, it had a debit balance of $52,309.30 for which Hacker was liable under the terms of the Agreement. Lowrance paid that balance pursuant to his relationship with Rosenthal, and Rosenthal then assigned to Lowrance all of its rights, title and interest in the account, including the right to collect the debit balance from Hacker.

On February 12, 1985, Hacker paid Lowrance $13,000, which he claimed constituted an accord and satisfaction of the debt. Lowrance brought an action against Hacker to collect the balance. On July 31, 1987, after a three-day bench trial, the district court entered judgment for Lowrance in the amount of $39,309.30 plus interest. The court reserved judgment on the question whether Hacker's contract with Rosenthal required Hacker to pay Lowrance's attorney's fees. On October 8, 1987, the district court entered a written decision holding that Rosenthal's assignment to Lowrance included the right to attorney's fees, and awarding Lowrance $8,273 of the $12,343 in fees he requested. Judgment in conformity with that ruling was entered on June 14, 1988. Hacker prosecuted separate appeals from the judgment on the merits and the award of attorney's fees, and this court affirmed both judgments. *See Lowrance v. Hacker,* 866 F.2d 950 (7th Cir.1989) (affirming judgment on the merits), and *Lowrance v. Hacker,* 888 F.2d 49 (7th Cir.1989) (affirming award of attorney's fees).

On October 28, 1987, Lowrance began garnishment proceedings against Stotler & Company (Stotler), a Chicago commodities brokerage firm which held funds allegedly belonging to Hacker. The garnishment affidavit served on Stotler referred only to the district court's July 31, 1987 judgment, in which the issue of attorney's fees had been reserved, and sought $39,309.30 in principal plus $12,116.20 in interest. Hacker challenged the validity of the garnishment on the ground that the funds in the account in question did not belong to him

---

1. Although Lowrance is still the named plaintiff in this case, it is clear that the real party in interest here is Ellis, not Lowrance. Therefore, we will treat this appeal as one brought by Ellis rather than Lowrance.

but to Phentex Enterprises, Ltd., a corporation he apparently controlled. After an evidentiary hearing on this issue, but before decision by the magistrate judge, Hacker obtained assignment of a judgment previously rendered against Lowrance in the principal amount of $150,690.36. On May 16, 1989, Hacker moved for a set-off of the two judgments. On September 15, 1989, the magistrate judge held that Hacker could properly set off Lowrance's July 31, 1987 judgment against him. On January 30, 1990, the district court entered an order adopting and affirming this aspect of the magistrate judge's decision.[2]

On September 27, Ellis filed a petition in his own name seeking $36,450 in attorney's fees for the postjudgment proceedings, including the prior appeals. Ellis' petition also sought a statutory attorney's lien on the Stotler funds for the attorney's fees already awarded. On October 5, 1990, the magistrate judge issued a report rejecting all of Ellis' claims and recommending that his motion be denied. The district court adopted the magistrate judge's Report and Recommendation in full, and Ellis appeals.

## II. ATTORNEY'S LIEN

Ellis claims an attorney's lien on the garnished Stotler funds under the Illinois Attorneys Lien Act. The Act provides:

Attorneys at law shall have a lien upon all claims, demands and causes of action ... which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon ... or, in the absence of such agreement, for a reasonable fee, for the services of such suits, claims, demands or causes of action.... To enforce such lien, such attorneys shall serve notice in writing ... upon the party against whom their clients may have such suits, claims or causes of action.... Such lien shall attach to any verdict,

judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, *from and after the time of service of the notice.*
Ill.Rev.Stat. ch. 13, ¶ 14 (1990) (emphasis supplied). Illinois courts have consistently held that no enforceable lien is created under the statute until the attorney has served the required notice. *McKee–Berger–Mansueto, Inc. v. Board of Education,* 691 F.2d 828, 835 (7th Cir.1982). Ellis served notice of lien on Stotler and on Hacker's attorney on February 7, 1990. By that time, however, the July 31, 1987 judgment in favor of Lowrance had been extinguished by the set-off of judgments. Since Lowrance had sought garnishment of the Stotler funds to enforce that judgment only, there was no claim on those funds to which Ellis' lien could attach.

Ellis attempts to avoid this conclusion by arguing that the set-off did not extinguish all of Lowrance's interest in the garnished funds because attorney's fees are exempt from set-off under section 12–178(5) of the Illinois Code of Civil Procedure, Ill.Rev. Stat. ch. 110. We find this argument unpersuasive. The only claim Lowrance made against the Stotler funds was for the amount of the judgment on the merits plus interest. That judgment clearly did not include an award of attorney's fees—the district court explicitly reserved the issue of attorney's fees for later proceedings. Although Lowrance *could* later have filed a garnishment affidavit against the Stotler funds based on the award of attorney's fees, he did not do so. Rather, he filed a separate garnishment action against Pioneer American Savings Bank in Florida (Pioneer), seeking collection of the attorney's fee award only.[3] Thus, we think it clear that attorney's fees were simply not involved in the Stotler garnishment proceedings, either as an "implicit" part of the judgment on the merits or as a separate

---

**2.** Lowrance appealed this judgment *pro se,* and this court affirmed without oral argument in an unpublished order.

**3.** We also note that on May 30, 1991, Ellis filed a new garnishment affidavit against the Stotler

funds with the Clerk of the District Court, seeking to enforce the award of attorney's fees. The propriety of that garnishment is still under consideration by the district court.

award. There is no question of an "exemption" from the set-off here, because the attorney's fees, which were awarded in supplementary proceedings, were never part of the set-off. *See Adam Martin Construction Co. v. Brandon Partnership*, 135 Ill.App.3d 324, 90 Ill.Dec. 162, 481 N.E.2d 962 (1985) (exemption does not apply where set-off judgment does not include an award of fees).[4]

### III. POSTJUDGMENT ATTORNEY'S FEES

 Ellis also appeals the district court's denial of his motion for attorney's fees for his services in the postjudgment proceedings. The first problem that this issue raises is the question of standing. In essence, Ellis is attempting to enforce, in his own name and for his own behalf, a contractual entitlement that belongs not to him but to his client. In the somewhat analogous circumstance of petitions for attorney's fees under 42 U.S.C. § 1988, both the First and Second Circuits have held that only a party, and not his attorney, has standing to bring the claim. *Benitez v. Collazo–Collazo*, 888 F.2d 930 (1st Cir. 1989); *Brown v. General Motors Corp.*, 722 F.2d 1009 (2d Cir.1983). These courts have held that section 1988, like the contract in this case, confers an entitlement only on the party, not on his attorney.

We have recognized, however, that this rule is not always controlling. "Technically, the award of attorney's fees under section 1988 is to the party, not to his lawyer, but it is common to make the award directly to the lawyer where ... the lawyer's contractual entitlement is uncontested." *Richardson v. Penfold*, 900 F.2d 116, 117 (7th Cir.1990). This exception makes sense; where the lawyer is acting in his capacity as the client's representative, the question whether the motion for fees is in the name of the party or his attorney truly is a "technicality." In such cases, it would "exalt[ ] form over substance" to deny the motion for fees "so that the ministerial function of substituting the plaintiff" for the attorney could be accomplished. *Ceglia v. Schweiker*, 566 F.Supp. 118, 120 n. 1 (E.D.N.Y.1983). By contrast, in the First and Second Circuit cases holding that the lawyer has no standing, the lawyer had been discharged by the client, so that he was not acting as the client's representative. Under those circumstances, the difference between the attorney and the client is *not* a technicality but a reality.

This case falls somewhere in the middle. First of all, Ellis claims that he is still acting as Lowrance's attorney. The magistrate judge, however, concluded that the attorney-client relationship between Ellis and Lowrance had been severed sometime during the course of the garnishment proceedings. There is strong evidence in the record to support that conclusion. According to the magistrate judge, Ellis did not appear in that proceeding on Lowrance's behalf after Hacker filed his motion for set-off in May of 1989. As early as January of 1989, Lowrance filed *pro se* an "Affidavit of Thomas J. Lowrance in Support of Plaintiff's Position to Deny Defendant's Motion to Supplement Record on Pending Motions to Quash Garnishment."[5] In March of 1989, Lowrance sent a letter to Hacker's attorney informing him that "Morris W. Ellis is not authorized, in the absence of my signed written expressed authorization to the contrary, Mr. Ellis is not authorized to settle or receive any payment of money in behalf of Thomas J. Lowrance relative to all matters" in Lowrance's case against Hacker. And Low-

---

4. Ellis *is* entitled to an attorney's lien on the fee award itself if he fulfills the notice requirements. It is not entirely clear that he has done so here, given that he served Hacker's counsel rather than Hacker. *In re Del Grosso*, 111 B.R. 178, 182 (Bankr.N.D.Ill.1990) (to be effective, notice of lien must be served on a party, not on counsel for a party); *Cazalet v. Cazalet*, 322 Ill.App. 105, 54 N.E.2d 61 (1944) (same). But we see no basis for imposing such a lien on the Stotler funds absent a garnishment action *against those funds seeking to enforce that judgment.*

5. The magistrate judge construed this document as a pleading in response to Hacker's motion to supplement the record. Report and Recommendation at 8 (Sept. 15, 1989).

rance appealed the district court's ruling of January 30, 1990, to this court *pro se.*

On the other hand, there is no question that Ellis was acting on behalf of Lowrance in defending Lowrance's judgments against Hacker's appeals to this court. There was no suggestion that Lowrance objected to Ellis' representation in those appeals. Had Ellis brought a motion for attorney's fees for those appeals immediately following this court's rulings in Lowrance's favor, Ellis' "contractual entitlement" to fees would have been uncontested, and the improper denomination of the petition a mere technicality that the court would have overlooked. Indeed, Ellis claims that the original petition for fees in this case, which the district court granted, was brought in his own name, and Hacker does not dispute this. In our view, Ellis' entitlement to fees for his services in protecting Lowrance's judgment on appeal did not become "contested" simply because he and Lowrance apparently came to a parting of the ways in the garnishment proceedings. Therefore, we conclude that Ellis has standing to petition for his reasonable fees for those services. Given the strong evidence of his estrangement from Lowrance during the garnishment proceedings, however, we find that he may not petition Hacker directly for fees incurred during those proceedings.

■ Hacker also contends that, whether or not Ellis has standing to bring a claim for attorney's fees, any claim for such fees is barred because it must be based on the contract between Hacker and Rosenthal which was merged in the judgments in favor of Lowrance. The Illinois Supreme Court has stated the doctrine of merger as follows:

> The general rule is, that by a judgment at law or a decree in chancery, the contract or instrument upon which the proceeding is based becomes entirely merged in the judgment. By the judgment of the court it loses all of its vitality and ceases to bind the parties to its execution.... Once becoming merged in the judgment, no further action at law or suit in equity can be maintained.

*Doerr v. Schmitt,* 375 Ill. 470, 31 N.E.2d 971, 972 (1941). Illinois courts, however, have held that the merger rule does not apply to contractual clauses providing for payment of attorney's fees. In *Stein v. Spainhour,* 196 Ill.App.3d 65, 142 Ill.Dec. 723, 553 N.E.2d 73, *appeal dismissed,* 133 Ill.2d 573, 149 Ill.Dec. 338, 561 N.E.2d 708 (1990), an Illinois appellate court held that the doctrine of merger did not apply to a prevailing plaintiff's motion to recover attorney's fees incurred in postjudgment proceedings pursuant to the lease between the plaintiff and the defendant. As the court explained:

> The doctrine of merger is applied to *causes of action* to bar relitigation of the same cause. In the case presented, plaintiff did not seek to relitigate any of defendant's liability regarding the breach of the lease but rather sought attorney fees which are ancillary to the primary cause of action. Further, as plaintiff points out, no judgment regarding attorney fees incurred on appeal was rendered in the trial court before the first appeal was filed or raised and considered by this court in the first appeal.

*Id.* 142 Ill.Dec. at 726, 553 N.E.2d at 76 (emphasis original). *See also Losurdo Bros. v. Arkin Distributing Co.,* 125 Ill. App.3d 267, 80 Ill.Dec. 348, 355, 465 N.E.2d 139, 146 (1984) ("Where ... the agreement between the parties expressly provides for the lessee to pay all reasonable attorney fees and costs incurred by the lessor in enforcing the covenants of the lease, ... it applies to such fees and costs on appeal where the lessor is successful in its lawsuit."). Hacker argues that we should reject the rule of *Stein* and *Losurdo Bros.* as an incorrect interpretation of the Illinois Supreme Court's decision in *Doerr.* We decline the invitation to second-guess the state courts' interpretation of state law. *Tippecanoe Beverages, Inc. v. S.A. El Aguila Brewing Co.,* 833 F.2d 633, 638–39 (7th Cir.1987) ("[U]nless we have good reason to believe that the state's highest court would reject a decision by an intermediate court we treat the decision as authoritatively stating the law of the state."). Ellis'

claim for attorney's fees is not barred by the doctrine of merger.

 We conclude that Ellis is entitled to a reasonable attorney's fee for his services in the appeals in spite of his failure to establish the terms of the contract between himself and Lowrance. Whatever the nature of that agreement, Ellis has the right to be compensated in *quantum meruit* for the services he rendered:

> If an attorney renders professional services, he has the right to be compensated for such services.... Where an express contract [between the attorney and client] is not entered into, there is generally an implied promise to pay a reasonable compensation for the services rendered by the attorney pursuant to the theory of *quantum meruit*. In Illinois a plaintiff may recover under *quantum meruit* on a claim made pursuant to an express contract without amendment of the pleadings, where plaintiff fails to establish the express contract but does show in fact that services were rendered.

*Greenbaum & Browne, Ltd. v. Braun,* 88 Ill.App.3d 210, 43 Ill.Dec. 303, 309, 410 N.E.2d 303, 309 (1980). In this case, Ellis' petition for fees did not even allege an express contract between himself and Lowrance. Nor was the award of fees for Ellis' services in obtaining the initial judgment for Lowrance based on the terms of an express contract between Ellis and Lowrance. Rather, the district court awarded fees based on what it determined to be a reasonable hourly rate. We do not see why an attorney who does not even plead an express contract should be worse off than one who does plead one but fails to prove its existence.

 Finally, Hacker argues that even if Ellis would otherwise have the right to recover postjudgment fees from Hacker, the district court's order denying Ellis' petition should be affirmed because the fees claimed are "unreasonable, unwarranted and excessive." Hacker then offers several pages of "examples" of Ellis' allegedly unreasonable, unwarranted and excessive claims. The determination of a reasonable attorney's fee, however, is a factual ques-

tion for the district court on remand. Therefore, we decline to address Hacker's contentions in this area.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED in part, REVERSED in part and REMANDED in part for further proceedings not inconsistent with this opinion.